## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WIDAD HUSSEIN SUNALLAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY; U.S. CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES; | ) | |
| DEPARTMENT OF STATE; | ) | |
| MARKWAYNE MULLIN, *in his official* | ) | No. 1:25-cv-11323-JEK |
| *capacity as Secretary of Department of* | ) | |
| *Homeland Security*; JOSEPH B. EDLOW, | ) | |
| *in his official capacity as Director of* | ) | |
| *USCIS*; MARCO RUBIO, *in his official* | ) | |
| *capacity as Secretary of State*; JOHN | ) | |
| ARMSTRONG, *in his official capacity as* | ) | |
| *Senior Bureau Official, Bureau of* | ) | |
| *Consular Affairs*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**KOBICK, J.**

Plaintiff Widad Sunallah brought this action seeking a declaratory judgment and a writ of mandamus to compel the defendants—the Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), the Department of State, DHS Secretary Markwayne Mullin, USCIS Director Joseph B. Edlow,[1] Secretary of State Marco Rubio, and Senior Bureau Official for the Bureau of Consular Affairs John Armstrong—to adjudicate the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for former Secretary of Homeland Security Kristi Noem and Director of USCIS Joseph B. Edlow is substituted for former Director of USCIS Kika Scott as defendants in this action.

1

I-130 family-relative petition she submitted on behalf of her son, Ahmad Sunallah, and his accompanying application for an immigrant visa. After this lawsuit was filed, the defendants refused Mr. Sunallah's visa application on two bases: (1) he had failed to submit required documentation, and (2) he was ineligible for a visa based on the Department of State's recent pause on immigrant visa issuances to applicants from certain countries. The defendants then moved to dismiss Ms. Sunallah's claims as moot under Federal Rule of Civil Procedure 12(b)(1). That motion will be granted because the I-130 petition and visa application have now been adjudicated, but the Court will also allow Ms. Sunallah's request for leave to file an amended complaint.

## BACKGROUND

The following facts are drawn from the complaint and materials submitted with the motion to dismiss, supplemented by "matters of public record" and other materials "susceptible to judicial notice," *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15, 20 (1st Cir. 2003), including "information from official government website[s]," *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (citations omitted). *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (court may consider documents outside the pleadings to determine whether it has jurisdiction on a Rule 12(b)(1) motion).

I.    **Statutory and Regulatory Background.**

The Immigration and Nationality Act ("INA") permits United States citizens and lawful permanent residents to seek lawful permanent resident status for certain noncitizen relatives. 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(B)(i). To do so, the citizen or lawful permanent resident must file a Form I-130, Petition for Alien Relative, with USCIS confirming that their relative (the "beneficiary") qualifies as an eligible family member. *Id.*; *see generally* 8 C.F.R. § 204.2(d)(1). Where, as here, the petition is approved but the beneficiary resides outside of the United States,

the beneficiary must also obtain a visa from the Department of State to be admitted into the country. 8 U.S.C. §§ 1181(a), 1182(a)(7)(A). Once USCIS approves a petition, it will forward the approved petition to the National Visa Center ("NVC"), an arm of the Department of State responsible for administering immigrant visas. 8 C.F.R. § 204.2(d)(3).

Upon receipt of the petition, the NVC must provide the beneficiary with instructions for applying for a visa. 9 U.S. Dep't of State, *Foreign Affairs Manual* § 504.1-2(a)(1) (hereinafter FAM). The beneficiary is then responsible for filing a Form DS-260, Online Application for Immigrant Visa and Alien Registration, paying the requisite fee, and submitting necessary documents. *See id.* § 504.1-3; U.S. Dep't of State, *Immigrant Visa Process*, https://perma.cc/9WZN-BMBP (listing steps for obtaining an immigrant visa). After the NVC receives and processes all necessary materials, the Department of State schedules a visa interview between the beneficiary and a consular officer at an embassy with jurisdiction over the beneficiary. *Id.*; 22 C.F.R. §§ 42.61(a), 42.62. Immediately after the interview, the consular officer, taking into consideration the visa application and the applicant's representations at that interview, "must issue the visa" or "refuse the visa under INA 212(a) or 221(g) or other applicable law." 22 C.F.R. § 42.81(a).[2] The Department of State's internal manual states that the consular officer "cannot temporarily refuse, suspend . . . , or hold the visa for future action." 9 FAM § 504.9-2; *see also id.* § 504.1-3(i)(1).

---

[2] As relevant here, Section 221(g) of the INA provides that no visa shall be issued if "(1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g).

3

A refusal made under 8 U.S.C. § 1201(g)—the kind at issue in this case—may nevertheless be "overcome" in one of two ways. 9 FAM §§ 302.1-8(B)(c), 306.2-2(A). First, a consular officer may place an officially refused application in "administrative processing," a process in which the refused visa application undergoes further investigation by the consular officer or awaits the issuance of an advisory opinion by the officer's superiors. *See id*. §§ 504.1-3(i)(1)(c); 504.11-3(A)(6)(a); 306.2-2(A)(a)(2); 22 C.F.R. § 42.81(c); U.S. Dep't of State, *Administrative Processing Information*, https://perma.cc/TMD3-R9P8. Upon the completion of that process, the refusal "may be overcome" based on the information gathered or the direction contained in the advisory opinion. 9 FAM § 306.2-2(A)(a)(2)(a). Alternatively, if the applicant, within one year of the date of refusal, "adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered" and "an additional application fee shall not be required." 22 C.F.R. § 42.81(e); *see* 9 FAM § 306.2-2(A)(a)(1). An applicant wishing to submit additional evidence after one year "must submit a new DS-260 [visa application] and pay a new [immigrant visa] fee." 9 FAM § 306.2-2(A)(a)(1)(c)(i).

## II.    Immigrant Visa Processing Pause.

Effective January 21, 2026, the Department of State "paused all visa issuances" to immigrants from 75 countries deemed to be "at high risk of U.S. public benefits reliance," including, as relevant here, Jordan. *Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*, U.S. Dep't of State (Feb. 2. 2026), https://perma.cc/Q2JZ-68ZC (formatting altered). The announcement noted that the Department "is undergoing a full review of all screening and vetting policies to ensure that immigrants from high-risk counties do not unlawfully utilize welfare in the United States or become a public charge." *Id.* It further stated

4

that, notwithstanding the new policy, individuals affected "may submit visa applications and attend interviews, and the Department will continue to schedule visa interviews." *Id.*

### III.    Factual Background.

Widad Sunallah is a 71-year-old naturalized United States citizen originally from Syria. ECF 1, ¶ 1. Before becoming a citizen in 2017, she attained lawful permanent resident status on July 15, 2011. *Id.* In September 2011, she filed an I-130 petition with USCIS on behalf of her son, Ahmad Sunallah, seeking to classify him as an unmarried adult son of a lawful permanent resident and thereby render him eligible to apply for an F2B visa. *Id.* ¶ 2; ECF 16-1, ¶ 4.[3] Her petition was approved on December 8, 2011. ECF 1-1; ECF 16-1, ¶ 4.

Following receipt of Ms. Sunallah's approved I-130 petition from USCIS, the NVC created a case file for Mr. Sunallah's visa application on December 29, 2011. ECF 16-1, ¶ 5. At the time, the priority date associated with his application—September 14, 2011—was not current in the F2B visa category, meaning that a visa was not yet available to him. *Id.* ¶¶ 6-7.[4] Shortly after Ms. Sunallah's naturalization in February 2017, the NVC changed Mr. Sunallah's visa category from F2B to F1 (unmarried adult son of a United States citizen). *Id.* ¶ 8. Even so, his priority date—still September 14, 2011—was not yet current in the F1 category. *Id.* ¶ 9.

Throughout 2017, the NVC twice received physical documents relating to Mr. Sunallah's visa application, and each time returned the documents to the original sender because "the case would be processed and documents submitted electronically." *Id.* ¶¶ 10-11. In December 2017, the

---

[3] An F2B visa is "for sons and daughters over 21 years of age whose sponsoring parent" is a lawful permanent resident. *Teles de Menezes v. Rubio*, 156 F.4th 1, 5 (1st Cir. 2025) (citing 8 U.S.C. § 1153(a)(2)(B)). An F1 visa is "for sons and daughters over 21 years of age whose sponsoring parent" is a United States citizen. *Id.* at 4 (citing 8 U.S.C. § 1153(a)(1)). Both categories are subject to annual caps. *Id.* at 4-5.

[4] A "priority date" is used by USCIS "to establish the order in which an alien will be able to obtain a visa or to adjust status." *Jin Qing Wu v. Holder*, 705 F.3d 1, 2 n.1 (1st Cir. 2013).

NVC received a properly filed Form I-864 Affidavit of Support and a Form DS-260 Application for Immigrant Visa on behalf of Mr. Sunallah. *Id.* ¶ 12. In April 2018, the NVC received an inquiry from his representative,[5] to which it responded "that [the] NVC was unable to respond without a privacy release from the parties." *Id.* ¶ 13.

On January 13, 2021, Mr. Sunallah's representative called the NVC to inquire about a notice he received indicating that his visa application had been terminated due to a year of inactivity. *Id.* ¶ 14. On February 28, 2022, the NVC sent an email to Mr. Sunallah's representative confirming that his case had been terminated. *Id.* ¶ 15. The NVC sent a final notice of termination on March 10, 2022, explaining that the parties had failed to respond to the previous termination notices within one year. *Id.* Mr. Sunallah's representative successfully disputed his application's termination, such that the termination was rescinded on June 16, 2025. *Id.* ¶¶ 16-19.

After rescinding its termination of Mr. Sunallah's application, the NVC, on June 18, 2025, provided his representative with instructions regarding the submission of certain documents that were incomplete or missing from his file. *Id.* ¶ 19. On November 18, 2025, the NVC determined that Mr. Sunallah's application was "documentarily qualified, meaning that all required documents had been submitted and fees paid, thus rendering the case eligible to be scheduled for a visa appointment" in Jordan. *Id.* ¶ 22. Mr. Sunallah completed his interview and executed his application for an immigrant visa before a consular officer at the United States Embassy in Amman, Jordan on February 12, 2026. *Id.* ¶¶ 23-25.

---

[5] The NVC's records indicate Mr. Sunallah authorized several attorneys or accredited representatives to represent him and to receive communications from the NVC on his behalf about his visa application. ECF 16-1, ¶¶ 8, 15. For simplicity, the Court refers to these individuals as his representatives.

Following that appointment, the consular officer "refused Mr. Sunallah's application for an immigrant visa under Section 221(g) of the [INA]." *Id.* ¶ 25. According to the affidavit submitted by the defendants, the bases for that refusal were Mr. Sunallah's (1) "fail[ure] to establish his eligibility for the visa sought and fail[ure] to provide required documentation," and (2) the fact that he "was subject to the Department of State pause on immigrant visa issuances for nationalities of countries whose immigrants are at high risk of U.S. public benefits reliance, which includes Jordan." *Id.* ¶ 25. Five days later, Mr. Sunallah provided the missing documentation, including an updated Form I-864 Affidavit of Support from Ms. Sunallah, his original birth certificate, and a medical examination report. *Id.* ¶¶ 25-26. His application remains refused under 8 U.S.C. § 1201(g). *Id.* ¶ 27; ECF 31.

## IV.    Procedural Background.

Ms. Sunallah filed this lawsuit in May 2025, approximately one month before the termination of Mr. Sunallah's visa application was rescinded and nine months before his application was refused. ECF 1. Her complaint seeks a writ of mandamus under 28 U.S.C. § 1361 compelling the defendants to adjudicate her I-130 petition and her son's visa application (Count I) and asserts a claim under Section 706(1) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), that the defendants failed to adjudicate the petition and visa application within a reasonable period of time (Count II). ECF 1, ¶¶ 39-48. In April 2026, the defendants moved to dismiss her claims as moot under Federal Rule of Civil Procedure 12(b)(1), arguing that the I-130 petition and visa application had been adjudicated. ECF 15. In support of their motion, the defendants attached an affidavit from Theresa Repede—an employee in the Department of State's Office of the Assistant Legal Adviser for Consular Affairs authorized to search the electronic Consular Consolidated Database of the Bureau of Consular Affairs for records of immigrant and

nonimmigrant visas—attesting that Mr. Sunallah's visa application was refused. *See* ECF 16; ECF 16-1. Ms. Sunallah opposed the motion, arguing that her complaint should not be dismissed because Mr. Sunallah's application remains unadjudicated and that, in any event, an exception to the doctrine of mootness applies. ECF 21.

The Court held a hearing on the motion in July 2026. ECF 30. At that hearing, the Court sought clarification regarding the basis for the defendants' refusal of Mr. Sunallah's visa application. In particular, the Court asked whether Mr. Sunallah's "fail[ure] to establish his eligibility for the visa sought and fail[ure] to provide required documentation" should be construed as one ground for refusal or two distinct bases for refusal. ECF 16-1, ¶ 25. Counsel for the defendants represented that although she tentatively believed the language reflected only one basis for refusal (i.e., a failure to establish eligibility *due to* insufficient documentation), she would clarify, via status report, whether Mr. Sunallah's refusal was based on anything other than (1) insufficient documents and (2) the pause on issuing immigrant visas to individuals from certain countries. Noting that Mr. Sunallah "provided the missing documentation" shortly after his refusal, *id.* ¶¶ 25-26, the Court additionally asked the defendants' attorney to indicate in her status report whether his application was under reconsideration pursuant to 22 C.F.R. § 42.81(e). The Court took the motion to dismiss under advisement and ordered the parties to file individual status reports on both questions within one week, and a joint status report reflecting the status of the case in light of their individual reports within two weeks.

The parties filed their individual status reports on July 15, 2026. ECF 31; ECF 32. The defendants' status report consisted of only two sentences, explaining that Mr. Sunallah's "case remains refused under section 221(g) of the [INA]" and that he "remains subject to the Department of State pause on immigrant visa issuances for nationals of countries whose immigrants are at high

risk of U.S. public benefits reliance, which includes Jordan." ECF 31, at 1. The report did not identify any additional basis for Mr. Sunallah's visa refusal, nor did it clarify whether his application is being reconsidered in light of his submitted documentation. *See id.* Accordingly, the defendants have waived any argument that Mr. Sunallah's application was refused for reasons other than (1) insufficient documentation or (2) the visa pause. Ms. Sunallah's status report attached a copy of the refusal notice provided by the Department of State, which states only that Mr. Sunallah's application was refused. ECF 32, at 1, 4.

## STANDARD OF REVIEW

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)). A motion to dismiss for mootness is a challenge to the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Id.* at 56. While the burden of establishing jurisdiction typically falls on the party asserting it, the burden of establishing mootness "rests squarely on the party raising it." *Id.* at 56, 60 (quotation marks omitted). To carry that "heavy" burden, the party raising mootness must make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quotation marks omitted). Although a court considering a motion to dismiss for mootness must generally treat a complaint's well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff, it may also consider materials, such as affidavits and depositions, outside of the pleadings. *Gonzalez*, 284 F.3d at 288.

**DISCUSSION**

I.    **Mootness.**

The defendants contend that Ms. Sunallah's claims are moot because she has already obtained the relief she seeks—namely, the adjudication of her I-130 petition and Mr. Sunallah's visa application. In their view, that adjudication was complete when the consular officer refused Mr. Sunallah's application, leaving no further action to be taken by the government. Disagreeing, Ms. Sunallah contends that the consular officer's refusal cannot be considered a complete adjudication of the application because it was based in part on the Department of State's temporary pause on the issuance of immigrant visas to individuals from Jordan. Although she acknowledges that her son's application was refused, she asserts that "there has not been any *final* determination or adjudication" because one basis for the refusal—the Department of State's pause—is, in and of itself, not final. ECF 21, at 2 (emphasis added).

The defendants have the better argument. The mootness doctrine requires that an actual controversy exist at all stages of a case, and if "events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." *Mangual*, 317 F.3d at 60. A case becomes moot when "an intervening event 'makes it impossible for the court to grant any effectual relief'" in favor of the plaintiff. *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 468 (1st Cir. 2009) (quoting *Gulf of Me. Fisherman's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002)). Where, as here, the relief sought is an order compelling the defendants to comply with their legal duties to act, the case becomes moot when the defendants fulfill those obligations.

Ms. Sunallah seeks relief in the form of a writ of mandamus compelling the defendants to adjudicate her I-130 petition and Mr. Sunallah's visa application in compliance with their legal

obligations under the INA. Pursuant to the INA and its regulations, the defendants were required to issue or refuse Mr. Sunallah a visa immediately after the execution of his visa application and the accompanying interview. 22 C.F.R. § 42.81(a). The defendants did precisely that when, on February 12, 2026, the consular officer refused Mr. Sunallah's application under 8 U.S.C. § 1201(g) because he failed to provide required documentation, and because he is subject to the Department of State's policy refusing to issue immigrant visas to applicants from Jordan.

Ms. Sunallah identifies no law or regulation indicating that a final adjudication of Mr. Sunallah's application requires more than what the defendants already undertook. She does not, for example, allege that her son's case was placed in administrative processing. *Compare Ibrahim v. U.S. Dep't of State*, No. 19-cv-610 (BAH), 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) (claims not moot where case refused but placed in administrative processing), *with Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104, 111 (D. Mass. 2024) (refusal of visa application is final decision even if placed in administrative processing). Nor does her complaint claim that the defendants, now in possession of Mr. Sunallah's missing documentation, have failed to timely reconsider his application under 22 C.F.R. § 42.81(e). *See Ghannad-Rezaie v. Laitinen*, 757 F. Supp. 3d 148, 151 (D. Mass. 2024) (agency has nondiscretionary duty to reconsider the refusal when applicant presents new evidence to overcome basis for refusal). Instead, she contends that no "culmination of the decision-making process that *conclusively* determin[ed] the rights" of Mr. Sunallah occurred because the other basis for the refusal of his application—the Department of State's visa pause—is temporary and therefore "not a final decision." ECF 21, at 2-3 (quotation marks omitted). But she does not identify any law or regulation prohibiting consular officers from refusing visa applications based on a policy, like the Department of State's pause, that may someday change or requiring them to revise their decisions *sua sponte* if such a change occurs.

11

More to the point, the possibility that the Department of State's policy may someday be amended—and that Mr. Sunallah's refusal may therefore potentially be overcome—does not alter the fact that the defendants fulfilled their legal obligations to adjudicate his visa application. *See* 9 FAM § 302.1-8(B)(c) ("A refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome."); *see also Sackett v. Env'tl Prot. Agency*, 566 U.S. 120, 127 (2012) ("The mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal."). Absent the identification of any mandatory action that the defendants failed to perform in the visa adjudication process, the Court has nothing to compel and can afford Ms. Sunallah no effectual relief. Her claims are, accordingly, moot. *See Weaver's Cove*, 589 F.3d at 468.[6]

## II.    <u>Leave to Amend.</u>

In her opposition to the defendants' motion to dismiss, Ms. Sunallah requested leave to file an amended complaint in the event that the Court finds her claims moot. ECF 21, at 4. Under Federal Rule of Civil Procedure 15, the "court should freely give leave [to amend a pleading] when

---

[6] In her opposition to the motion to dismiss, Ms. Sunallah alternatively argued that her claims, even if moot, are nevertheless justiciable because the defendants' unreasonable delay in adjudication is "by [its] nature, capable of repetition, yet evading review." *Daley*, 292 F.3d at 88 (quotation marks omitted). "[T]o qualify for this narrow exception to the mootness doctrine, a plaintiff must show that (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 88-89 (quotation marks omitted). The exception does not apply here. As Ms. Sunallah's counsel acknowledged at the hearing, her complaint alleges that the unreasonable delay she challenges persisted for approximately 14 years. ECF 1, ¶¶ 3-4 (alleging that Ms. Sunallah's I-130 petition was approved in December 2011). She has not, therefore, demonstrated "on these particular facts a realistic threat that no trial court ever will have enough time to decide the underlying issue." *Am. Civ. Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 57 (1st Cir. 2013) (quotation marks omitted) (exception did not apply where challenged contract was in effect for five and a half years and could have been challenged "much earlier than the date on which the [plaintiff] filed suit") (collecting cases).

justice so requires," Fed. R. Civ. P. 15(a)(2), though requests "characterized by undue delay, bad faith, futility, [or] the absence of due diligence" need not be granted, *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (quotation marks omitted).

Ms. Sunallah seeks leave to file an amended complaint that would include a claim under Section 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), concerning the "arbitrary and capricious decision making process" surrounding the consideration of Mr. Sunallah's visa application in light of the Department of State's pause policy. ECF 21, at 4 (quotation marks omitted). She may also seek to amend her claim for unreasonable delay under Section 706(1) of the APA, 5 U.S.C. § 706(1), to assert unreasonable delay in the defendants' reconsideration of Mr. Sunallah's application under 22 C.F.R. § 42.81(e) following his timely submission of his missing documents after the refusal. Such claims would not, as counsel for the defendants acknowledged at the hearing, be futile. *See Ullah v. Lafave*, No. 25-cv-12804-LTS, 2026 WL 1541774, *9-10 (D. Mass. June 2, 2026) (the Department of State's pause policy is likely in excess of statutory authority); *Ghannad-Rezaie*, 757 F. Supp. 3d at 153 (22 C.F.R. § 42.81(e) imposes a "mandatory duty on the part of the consular officer to reconsider the refusal of a visa application when the applicant presents new evidence tending to overcome the basis for the refusal"). In light of the developments that occurred after Ms. Sunallah filed her original complaint—namely, the adjudication of Mr. Sunallah's visa application—such an amendment would serve the interests of justice and would not be "characterized by undue delay, bad faith, futility, [or] the absence of due diligence in bad faith." *Nikitine*, 715 F.3d at 390 (quotation marks omitted). Accordingly, the Court will allow Ms. Sunallah's request for leave to amend.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, the defendants' motion to dismiss, ECF 15, is GRANTED. Ms. Sunallah's complaint, ECF 1, is dismissed without prejudice and with leave to amend. Any amended complaint must be filed on or before August 19, 2026.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: July 29, 2026                     UNITED STATES DISTRICT JUDGE

14